UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

**GERARDO ANTONIO GUTIERREZ**,                               Index No.

               Plaintiff,


             -against-                                  **COMPLAINT**

**RB MAINTENANCE LLC, RBM
MAINTENANCE LLC, RBM
MAINTENANCE D/B/A CARTEL, TOYOTA**                           **JURY TRIAL**
**OF BAYRIDGE, LLC D/B/A TOYOTA OF**
**BAY RIDGE BROOKLYN, FERNANDO**                             **DEMANDED**
**BARRIOS, INDIVIDUALLY, AND ROXANA**
**BARRIOS, INDIVIDUALLY.**



             Defendants.

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

       Plaintiff GERARDO ANTONIO GUTIERREZ ("Gutierrez"), by and through his

attorneys, Franklin, Gringer & Cohen, P.C., hereby brings this complaint against RB

MAINTENANCE LLC, RBM MAINTENANCE LLC, RBM MAINTENANCE D/B/A

CARTEL, TOYOTA OF BAYRIDGE, LLC D/B/A TOYOTA OF BAY RIDGE BROOKLYN,

FERNANDO BARRIOS, INDIVIDUALLY, AND ROXANA BARRIOS, INDIVIDUALLY,

(together "Defendants") and allege as follows:

## INTRODUCTION

      1.     Mr. Gutierrez brings this action against Defendants for their violations of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.,* and the Minimum Wage Act

("MWA") incorporated in the New York Labor Law ("NYLL"), N.Y. Lab. L., §§ 201 *et seq.*,

arising from Defendants willful, malicious, and unlawful employment policies concerning the payment of wages to Mr. Gutierrez.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and under 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343.  This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this the Eastern District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this district.

## PARTIES

4.      Defendants RB Maintenance LLC, RBM Maintenance LLC, and RBM Maintenance d/b/a Cartel (together, the "RBM Defendants") are various corporate entities that own and operate a single commercial cleaning company that providers porters and other cleaning professionals to and for various businesses throughout the State of New York. The RBM entities operate out of the same two corporate locations (one in New York, and the other in New Jersey), use the entity names interchangeably, and operate a single website: www.rbmcares.com.

5.      The RBM Defendants, together with Defendant Toyota of Bayride, LLC d/b/a Toyota of Bay Ridge Brooklyn ("Toyota of Bay Ridge"), are Plaintiff's joint employers. Both supervise and control his work and the conditions of his employment.

6.      The RBM Defendants paid Plaintiff's wages.

7.      The RBM Defendants hired Plaintiff, but both the RBM Defendants and Toyota of Bay Ridge had the decision making authority, and ability, to terminate his employment.

8.      Toyota of Bay Ridge determined Plaintiff's schedule (days and hours) as well as his assignment of duties, setting forth his tasks and responsibilities.

9.      Plaintiff was equally supervised by the RBM Defendants and Toyota of Bay Ridge.

10.     Plaintiff was made to follow rules and directions provided by both the RBM Defendants and Toyota of Bay Ridge.

11.     Both the RBM Defendants and Toyota of Bay Ridge were responsible for ensuring safe conditions in the work place.

12.     RBM Defendants were during the period relevant to this lawsuit, businesses with gross annual revenue in excess of $500,000.00 per year.


*RB Maintenance LLC*

13.     RB Maintenance LLC was, and throughout the period relevant to this lawsuit remains, a domestic limited liability company with a principal place of business at 1216 Broadway, Suite 62, New York, New York 10001.

14.     RB Maintenance LLC was, and throughout the period relevant to this lawsuit remains, a corporation with a principal place of business at 1216 Broadway, Suite 62, New York, New York 10001.

15.     RB Maintenance LLC was, and throughout the period relevant to this lawsuit remains, limited partnership with a principal place of business at 1216 Broadway, Suite 62, New York, New York 10001.

16.    RB Maintenance LLC was, and throughout the period relevant to this lawsuit remains, limited liability partnership with a principal place of business at 1216 Broadway, Suite 62, New York, New York 10001.

17.    RB Maintenance LLC was, and throughout the period relevant to this lawsuit remains, a foreign limited liability company with a principal place of business at 8 Campus Drive, Suite 105, Parsippany, New Jersey 07054.

18.    RB Maintenance LLC was, during the period relevant to this lawsuit, a business with gross annual revenue in excess of $500,000.00 per year.

### RBM Maintenance LLC

19.    RBM Maintenance LLC was, and throughout the period relevant to this lawsuit remains, a domestic limited liability company with a principal place of business at 1216 Broadway, Suite 62, New York, New York 10001.

20.    RBM Maintenance LLC was, and throughout the period relevant to this lawsuit remains, a corporation with a principal place of business at 1216 Broadway, Suite 62, New York, New York 10001.

21.    RBM Maintenance LLC was, and throughout the period relevant to this lawsuit remains, limited partnership with a principal place of business at 1216 Broadway, Suite 62, New York, New York 10001.

22.    RBM Maintenance LLC was, and throughout the period relevant to this lawsuit remains, limited liability partnership with a principal place of business at 1216 Broadway, Suite 62, New York, New York 10001.

23.     RBM Maintenance LLC was, and throughout the period relevant to this lawsuit remains, a foreign limited liability company with a principal place of business at 8 Campus Drive, Suite 105, Parsippany, New Jersey 07054.

24.     RBM Maintenance LLC was, during the period relevant to this lawsuit, a business with gross annual revenue in excess of $500,000.00 per year.

*RBM Maintenance d/b/a Cartel*

25.     RBM Maintenance d/b/a Cartel was, and throughout the period relevant to this lawsuit remains, a domestic limited liability company with a principal place of business at 1216 Broadway, Suite 62, New York, New York 10001.

26.     RBM Maintenance d/b/a Cartel was, and throughout the period relevant to this lawsuit remains, a corporation with a principal place of business at 1216 Broadway, Suite 62, New York, New York 10001.

27.     RBM Maintenance d/b/a Cartel was, and throughout the period relevant to this lawsuit remains, limited partnership with a principal place of business at 1216 Broadway, Suite 62, New York, New York 10001.

28.     RBM Maintenance d/b/a Cartel was, and throughout the period relevant to this lawsuit remains, limited liability partnership with a principal place of business at 1216 Broadway, Suite 62, New York, New York 10001.

29.     RBM Maintenance d/b/a Cartel was, and throughout the period relevant to this lawsuit remains, a foreign limited liability company with a principal place of business at 8 Campus Drive, Suite 105, Parsippany, New Jersey 07054.

30.    RBM Maintenance d/b/a Cartel was, during the period relevant to this lawsuit, a business with gross annual revenue in excess of $500,000.00 per year.

***Toyota of Bayridge, LLC d/b/a Toyota of Bay Ridge Brooklyn***

31.    Toyota of Bay Ridge is comprised of a car dealership and service center.

32.    Toyota of Bay Ridge was, and throughout the period relevant to this lawsuit remains, a domestic limited liability company with a principal place of business at 6401 6th Avenue, Brooklyn, NY 11220.

33.    Toyota of Bay Ridge was during the period relevant to this lawsuit a business with gross annual revenue in excess of $500,000.00 per year.

***Fernando Barrios***

34.    Upon information and belief, Defendant Fernando Barrios is a resident of the State of New York.

35.    Upon information and belief, Defendant Fernando Barrios is an owner, office, director and/or managing agent of the RBM Defendants, and participated in the day-to-day operations of corporate defendants, and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, as well as the NYLL.

36.    Upon information and belief, Defendant Fernando Barrios is an owner, office, director and/or managing agent of RB Maintenance LLC, and participated in the day-to-day operations of corporate defendant RB Maintenance LLC and acted intentionally and

maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and Regulations promulgated thereunder, as well as the NYLL.

37.    Upon information and belief, Defendant Fernando Barrios is an owner, office, director and/or managing agent of RBM Maintenance LLC, and participated in the day-to-day operations of corporate defendant RBM Maintenance LLC and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and Regulations promulgated thereunder, as well as the NYLL.

38.    Upon information and belief, Defendant Fernando Barrios is an owner, office, director and/or managing agent of RBM Maintenance d/b/a Cartel, and participated in the day-to-day operations of corporate defendant RBM Maintenance d/b/a Cartel and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and Regulations  promulgated thereunder, as well as the NYLL.

39.    Defendant Fernando Barrios exercised control over the terms and conditions of Plaintiff's employment, in that he had the power to: (i) hire and fire employees, (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise and control the work of employees, and (v) otherwise affect the quality of Plaintiff's employment.

**Roxana Barrios**

40.     Upon information and belief, Defendant Roxana Barrios is a resident of the State of New York.

41.    The RBM Defendant's website, www.rbmcares.com, references Defendant Roxana Barrios' ownership on its "About Me" page: "RBM Maintenance is certified as a *minority-*

*owned*, *woman-owned*, and *small business enterprise* that serves the *commercial* and *industrial market.*" (emphasis in original).

42.    Upon information and belief, Defendant Roxana Barrios is an owner, office, director and/or managing agent of the RBM Defendants, and participated in the day-to-day operations of corporate defendants, and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, as well as the NYLL.

43.    Upon information and belief, Defendant Roxana Barrios is an owner, office, director and/or managing agent of RB Maintenance LLC, and participated in the day-to-day operations of corporate defendant RB Maintenance LLC and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and Regulations promulgated thereunder, as well as the NYLL.

44.    Upon information and belief, Defendant Roxana Barrios is an owner, office, director and/or managing agent of RBM Maintenance LLC, and participated in the day-to-day operations of corporate defendant RBM Maintenance LLC and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and Regulations promulgated thereunder, as well as the NYLL.

45.    Upon information and belief, Defendant Roxana Barrios is an owner, office, director and/or managing agent of RBM Maintenance d/b/a Cartel, and participated in the day-to-day operations of corporate defendant RBM Maintenance d/b/a Cartel and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and Regulations  promulgated thereunder, as well as the NYLL.

46.     Defendant Roxana Barrios exercised control over the terms and conditions of Plaintiff's employment, in that he had the power to: (i) hire and fire employees, (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise and control the work of employees, and (v) otherwise affect the quality of Plaintiff's employment.

*Plaintiff*

47.     Plaintiff is an adult resident of Kings County, New York.

48.     Plaintiff Mr. Gutierrez was employed by Defendants as a "daily porter" since January 2020 though his resignation in late May, 2025. Plaintiff's resignation was a direct result of fear of intimidation following the filing of the instant suit, and a preventative measure to ensure Defendants would not retaliate against him.

49.     At all relevant times, Plaintiff worked as a porter at Toyota of Bay Ridge, located at 6401 6th Avenue, Brooklyn, NY 11220.

50.     Plaintiff's primary duties were to clean the facilities, spread out across multiple buildings. He engaged in sweeping, moping, carrying and moving items, and other manual work.

## STATEMENT OF FACTS

51.     Defendants constituted an enterprise as the term defined by 29 U.S.C. § 203(r), known as "RBM Maintenance", and in that capacity are a single employer with respect to Gutierrez.

52.     RBM Maintenance is centrally managed and controlled from the office at 1216 Broadway, Suite 62, New York, New York 10001.

53.     RBM Maintenance is centrally managed and controlled from the office at 8 Campus Drive, Suite 105, Parsippany, New Jersey 07054.

54.     Upon information and belief RBM Maintenance is a commercial cleaning company.

55.     RBM Defendants jointly maintain a single unified website, www.rbmcares.com.

56.     At all times relevant herein, Defendants are, and continue to be, an "enterprise engaged in commerce" within the meaning of FLSA.

57.     At all relevant times, the work performed by porters, and Plaintiff specifically, is directly essential to the business operated by the RBM Defendants.

58.     At all relevant times, the work performed by porters, and Plaintiff specifically, is directly essential to the business operated by Toyota of Bay Ridge.

59.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

60.     Defendants knew that nonpayment of minimum wage, overtime, and spread of hours compensation would economically injure Plaintiffs, and violated federal and state laws.

61.     Plaintiff spends more than 25% of his work time engaged in physical labor.

62.     Plaintiff's role as a daily porter involves manual labor such as sweeping, mopping, and lifting heavy items.

63.     Plaintiff beings his shifts at Toyota Bay Ridge by cleaning the service area/building, and then progresses to the main building (used for new car purchases). If directed to do so, he will also clean the used car building too.

64.     Instructions on what areas to clean are provided by RBM Maintenance as well as Toyota of Bay Ridge.

65.     Plaintiff's typical hours are 3:00 AM to 4:00 PM, six days per week.

66.     From January 2020 to December 2020, Plaintiff typically worked 62 hours per week.  This would include 7 days a week, for 9.5 hour shifts on Monday through Saturday, and a 5 hour shift each Sunday.  On occasion, Plaintiff would work an additional or longer shift, as requested. During this time, Plaintiff was paid $13.50 per hour, for all hours worked. He was not paid overtime for the 22 additional hours over 40 that he worked each week,

67.     From January 2021 to May 2025, Plaintiff typically worked 75 hours per week. This would include 6 days per week, Monday through Saturday, from 3:00 AM to 4:00 PM, totaling 12.5 hours per shift. During the entirety of this time, Plaintiff was not paid an additional hour of work at the minimum wage ("spread of hours" pay) for each shift worked, despite working 10+ hours each shift.

68.     From January 2021 to February 2022, Plaintiff was paid $13.50 per hour for all hours worked. During this time, Plaintiff was not paid minimum wage for the first 40 hours he worked each week, nor was he paid an overtime rate of time and half for the 35 additional hours worked each week.

69.     From March 2022 to May 2025, Plaintiff was paid $14.50 per hour for all hours worked. From March 2022 to December 2022, he was not paid an overtime rate of time and half for the 35 additional hours worked each week. From January 2023 to May 2025, Plaintiff was not paid minimum wage for the first 40 hours he worked each week, nor was he paid an overtime rate of time and half for the 35 additional hours worked each week.

70.     At the time of hire, Plaintiff was not provided a wage notice, or any written information regarding his rate of pay.

71.     Upon receiving an increase in his hourly rate, Plaintiff was not provided a wage notice, or any written information regarding his rate of pay.

72.     Plaintiff was not provided with wage statements, paystubs, or any written information regarding his pay.

73.     Plaintiff was paid twice each month, receiving one payment for shifts worked on the first through fifteenth of the month, and a second payment for shifts worked on the sixteenth through the end of the month.

74.     Plaintiff was paid different days and at different times each month, with no predictability as to when the payment would be made.

75.     Initially, Plaintiff was paid via Zelle from an account titled "R B M  Maintenance LLC" and over time, the Defendants moved to a new system and began paying Plaintiff via ACH (automatic transfer), by an account titled " RBM Maintenanc Payroll" [sic].

## FIRST CLAIM FOR RELIEF

### (FLSA Overtime Violations, 29 U.S.C. §201, *et seq.*)

76.     Plaintiffs realleges and incorporates by reference all previous paragraphs.

77.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce", within the meaning of FLSA, 29 U.S.C. § 203.

78.     Throughout the statute of limitations period covered by these claims, Plaintiff has worked in excess of forty (40) hours per workweek.

79.     At all relevant times, Defendants operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay Plaintiff the appropriate overtime rate for work in excess

of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA even though Plaintiff has been and is entitled to overtime.

80.     At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiff the required overtime rates for hours worked in excess of forty (40) hours per workweek.

81.     Defendants failed to properly disclose or apprise Plaintiff of his rights under the FLSA.

82.     Plaintiff seeks damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, post-judgment interest, and such other legal and equitable relief as this court deems just and proper.

## SECOND CLAIM FOR RELIEF

### (New York State Minimum Wage Violations, NYLL §§ 650 *et seq.*)

83.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

84.     The wage provisions of the NYLL apply to the Defendants and protect the Plaintiff.

85.     Defendants willfully and knowingly paid Plaintiff less than the New York State Minimum Wage for all hours worked.

86.     By failing to lawfully compensate Plaintiff, Defendants violated Plaintiffs statutory rights under the NYLL.

87.     The forgoing conduct, as alleged, constitutes a willful violation of the NYLL without a good or reasonable basis.

88.     As a result of Defendants' unlawful conduct, Plaintiffs is entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663 and §198.

## THIRD CLAIM FOR RELIEF

### (New York State Overtime Violations, NYLL § 650 *et. seq.*)

89.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

90.     It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying proper overtime wages for all hours worked in excess of forty (40) hours in any workweek.

91.     Throughout the relevant time period, Defendants willfully, regularly and repeatedly failed to pay Plaintiff at the required overtime rate for hours worked in excess of forty (40) hours per workweek.

92.     As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law §663.

## FOURTH CLAIM FOR RELIEF

### (New York State Spread of Hours Violations, NYLL § 650 *et. seq.*)

93.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

94.    Defendants willfully violated Plaintiff's rights by failing to pay Plaintiff an additional hour of pay at minimum wage for each day worked more than ten (10) hours, in violation of the New York Minimum Wage Act and its implementing regulations, NYLL §§ 650 et seq.; 12 N.Y. C. R. R. § 142-2.4

95.    Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants his unpaid spread of hour compensation, liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to NYLL § 663 (1).

## FIFTH CLAIM FOR RELIEF

### (Failure to Provide Wage Notice, New York State Wage Theft Prevention Act and NYLL § 195(1))

96.    Plaintiff alleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

97.    The New York State Wage Theft Prevention Act and NYLL § 195(1) requires every employer to notify its employees, in writing, among other things, of the employee's rate of pay and regular pay day.

98.    Defendants have willfully failed to supply Plaintiff with a wage notice, as required by NYLL, § 195(1), within ten (10) days of the start of Plaintiffs employment.

99.    Through their knowing or intentional failure to provide the Plaintiff with the wage notice required by the NYLL, Defendants willfully violated NYLL Article 6, §§ 190 *et. seq.,* and supporting New York State Department of Labor Regulations.

100.    Due to Defendants' willful violations of the NYLL, Article 6, § 195(1), Plaintiff is entitled to statutory penalties of fifty ($50.00) dollars each day that Defendants

failed to provide Plaintiff with a wage notice and reasonable attorney's fees and costs as provided for by NYLL, Article 6 §198(1-b).

## SIXTH CLAIM FOR RELIEF

### (Failure to Provide Wage Statements, New York State Wage Theft Prevention Act and NYLL § 195(3))

101.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

102.    Defendants have willfully failed to supply Plaintiff with accurate wage statements, as required by NYLL, § 195(3).

103.    Through their knowing or intentional failure to provide the Plaintiff with a wage statement as required by the NYLL, Defendants willfully violated NYLL Article 6, §§ 190 *et. seq.,* and supporting New York State Department of Labor Regulations.

104.    Due to Defendants' willful violations of the NYLL, Article 6, § 195(3), Plaintiff is entitled to statutory penalties of two hundred and fifty ($250.00) dollars each day that Defendants failed to provide Plaintiff with a wage notice and reasonable attorney's fees and costs as provided for by NYLL, Article 6 §198(1-d).

## SEVENTH CLAIM FOR RELIEF

### (Frequency of Pay Violation, NYLL § 191)

105.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

106.    Defendants have willfully or intentionally failed to pay Plaintiff, a manual worker, within seven days after the end of the week in which wages are earned, as required by NYLL, §191(1)(a).

107.    Defendants have willfully or intentionally failed to pay Plaintiff on a regular bi-weekly schedule, with the funds being provided on the same dates each month. Instead, he was paid twice per month, but with no predictability as to when he would actually receive the funds.

108.    Through their knowing or intentional failure to provide the Plaintiff with prompt and correct payment as required by the NYLL, Defendants willfully violated NYLL § 191 *et. seq.,* and supporting New York State Department of Labor Regulations.

109.    Due to Defendants' willful violations of NYLL § 191(1)(a), Plaintiff is entitled to statutory penalties and damages of up to 100% of the lost interest due for the delayed wage payment, calculated using a daily interest rate for each day payment is late based on the annual interest rate in effect in New York, which is currently sixteen (16%) percent.

110.    Due to Defendants' willful violations of NYLL § 191(1)(a) and related failures, Plaintiff is entitled to statutory penalties and liquidated damages equal to 100% of the total unpaid wages.

111.    Should it be determined that Defendants have been subject to a previous finding or order for violations of NYLL § 191 (1)(a) relating to the work in which Plaintiff was employed to engage in, Plaintiff is entitled to statutory penalties and liquidated damages equal to 100% of the total unpaid wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.     An award of unpaid overtime wages for all hours worked over forty (40) in a work week due under the FLSA;

B.     An award of liquidated damages as a result of Defendants' failure to pay wages for overtime wages pursuant to 29 U.S.C. § 216;

C.     An award of unpaid minimum wages for all hours worked under NYLL;

D.     An award of liquidated damages as a result of Defendants' failure to pay minimum wages for all hours worked under NYLL;

E.     An award of unpaid an extra hour of pay due for working over ten (10) hours in a day pursuant to the NYLL;

F.     An award of liquidated damages as a result of Defendants' failure to pay spread of hour under NYLL;

G.     An award of accrued interest on all unpaid wages due to late payment pursuant to the NYLL;

H.     An award of liquidated damages on all unpaid wages due to late payment pursuant to the NYLL;

I.     Penalties and punitive available under applicable laws;

J.     Costs of action incurred herein, including expert fees;

K.     An award of costs and expenses associated with this action, together with reasonable attorneys' fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663 and other applicable statutes;

L.     Pre-judgment and post-judgment interest, as provided by law; and

M.      Such other and further legal and equitable relief as this Court deems necessary, just

and proper.

Dated:  May 30, 2025
        Garden City, New York

Respectfully submitted,
**FRANKLIN, GRINGER & COHEN, P.C.**

*Elana Henderson*

_ Elana T. Henderson, Esq.
*Attorneys for Plaintiff*
666 Old Country Road, Suite 202
Garden City, New York 11530
(516) 228-3131
ehenderson@franklingringer.com

19