UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
GERARDO ANTONIO GUTIERREZ,

Plaintiff,

-against-

RB MAINTENANCE LLC, RBM MAINTENANCE LLC, RBM MAINTENANCE D/B/A CARTEL, TOYOTA OF BAYRIDGE, LLC D/B/A TOYOTA OF BAY RIDGE BROOKLYN, BAY RIDGE MOTOR SALES D/B/A BAY RIDGE TOYOTA, BAY RIDGE MOTOR SALES, INC., BAY RIDGE FOREIGN AUTO SALES CORP., BAY RIDGE AUTOMOTIVE MANAGEMENT CORP., TITAN MOTOR GROUP, TOYOTA MOTOR CORPORATION, NEIL KELLIS, FERNANDO BARRIOS, AND ROXANA BARRIOS,

Defendants.
---------------------------------------------------------X

**<u>REPORT AND RECOMMENDATIONS</u>**
25 CV 3050 (ENV) (PCG)

**CROSS-GOLDENBERG**, United States Magistrate Judge:

On June 2, 2025, plaintiff Gerardo Antonio Gutierrez commenced this action against defendants RB Maintenance LLC, RBM Maintenance LLC, RBM Maintenance d/b/a Cartel, Fernando Barrios, Roxana Barrios (collectively, the "RBM Defendants"), and Toyota of Bayridge, LLC d/b/a Toyota of Bayridge Brooklyn ("Toyota of Bayridge"). (Dkt. No. 1). On October 29, 2025, Plaintiff amended his Complaint to add defendant Bay Ridge Motor Sales d/b/a Bay Ridge Toyota ("Bay Ridge Toyota"). (Dkt. No. 10 ("First Am. Compl.")). Plaintiff and the RBM Defendants attended mediation on December 23, 2025. On February 5, 2026, Plaintiff amended his Complaint a second time to add defendants Bay Ridge Motor Sales, Inc.,

Bay Ridge Foreign Auto Sales Corp., Bay Ridge Automotive Management Corp., Titan Motor Group, Toyota Motor Corporation, and Neil Kells (together with Toyota of Bay Ridge and Bay Ridge Toyota, the "Toyota Defendants"). (Dkt. No. 15 ("Second Am. Comp.")). Plaintiff brings claims against all Defendants alleging that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., New York Labor Law ("NYLL") §§ 190 et seq. and §§ 650 et seq., and related regulations, 12 N.Y.C.R.R. § 142-2.2, for failure to pay overtime, minimum wage, and spread-of-hours premiums, failure to provide wage notices, frequency of pay violations, and breach of contract.

Presently before the Court is Plaintiff's Motion for Settlement Approval (Dkt. No. 16 ("Mot.")), which was referred to the undersigned Magistrate Judge by the Honorable Eric N. Vitaliano on August 4, 2026.

## BACKGROUND

Plaintiff worked as a cleaner and porter for the RBM Defendants from January 2020 to May 2025. (Second Am. Compl. ¶ 91). The RBM Defendants operate as a single entity cleaning business. (Id. ¶¶ 4, 5). The Toyota Defendants owned and operated car dealerships and service centers where Plaintiff performed cleaning tasks. (Id. ¶¶ 6-17). The RBM Defendants managed Plaintiff's pay while the Toyota Defendants determined his schedule and daily tasks and job location. (Id. ¶¶ 23-28). Plaintiff alleges that the RBM Defendants and the Toyota Defendants

operated as Plaintiff's joint employers[1] and both supervised Plaintiff and had the authority to terminate Plaintiff's employment. (Id. ¶¶ 21, 24, 26, 27).

From January 2020 through December 2020, Plaintiff alleges he worked 62 hours per week, was paid an hourly rate of $13.50, and was not paid overtime. (Id. ¶ 118). From January 2021 through February 2022, he alleges he worked 12.5 hours per day, 6 days per week, and was paid an hourly rate of $13.50, but did not receive spread-of-hours premiums or overtime pay. (Id. ¶¶ 119, 120). From March 2022 through May 2025, he alleges he worked 12.5 hours per day, 6 days per week, and was paid an hourly wage of $14.50, but did not receive overtime pay or spread-of-hours premiums. (Id. ¶¶ 119, 121). He also alleges that he was not provided with wage notices and that he was paid on different days at different times of the month. (Id. ¶¶ 122-126).

Plaintiff initiated this action against the RBM Defendants and Toyota of Bay Ridge on June 2, 2025. On October 28, 2025, Plaintiff filed an Amended Complaint adding Bay Ridge Toyota as a defendant. (Dkt. No. 10). No proof of service on Bay Ridge Toyota has been filed, and Bay Ridge Toyota has not appeared or answered or otherwise responded to the Amended Complaint.

Plaintiff and the RBM Defendants attended mediation before mediator Andrew Kimler on December 23, 2025. On December 25, 2025, Plaintiff filed a letter on the docket indicating that he reached a settlement with the RBM Defendants and noting that neither Toyota of

---

[1] Plaintiff does not allege the exact nature of the relationship between the RBM Defendants and the Toyota Defendants.

Bayridge nor Bay Ridge Toyota had appeared at any point in this litigation or participated in the mediation.[2] (Dkt. No. 13).

In his December 25, 2025 letter, Plaintiff requested leave to amend his Complaint to add additional Toyota dealership entities and owners as defendants. (Id.) The Court had not yet ruled on this request when Plaintiff renewed his motion on January 20, 2026. (Dkt. No. 14). The Court granted leave to amend (Electronic Order, dated January 29, 2026), and Plaintiff filed his Second Amended Complaint on February 5, 2026, naming the new Toyota Defendants and adding a breach of contract claim against the RBM Defendants. (See generally Second Am. Compl.). There is no evidence that the Second Amended Complaint has been served on the new Toyota Defendants and none of them have appeared in this action or answered or otherwise responded to the Second Amended Complaint. The Toyota Defendants that were added in the Second Amended Complaint were not parties at the time of the mediation and are not parties to the results of the mediation.

On February 11, 2026, Plaintiff filed a Motion for Settlement Approval and Attorney's Fees. None of the Defendants joined in the Motion. According to the Motion, Plaintiff and the RBM Defendants reached a settlement at mediation, where the Parties negotiated for over five hours regarding the settlement sum and specific payment plan. (Mot. at 2). Following the mediation, mediator Andrew Kimler sent an email memorializing the terms of the agreement:

> Hi again [Counsel], I appreciate your efforts and perseverance today. Glad we got it settled. As you and your clients agreed, and subject to Court approval, this case was settled as follows: 1. The

[2] Defendant Toyota of Bay Ridge was served on June 12, 2026 when a process server delivered the Summons and Complaint to a manager at its Brooklyn business address. (Dkt. No. 17-1 at 11). Toyota of Bay Ridge has not appeared.

> RBM defendants and defendants Fernando Barrios and Roxana Barrios (the "defendants") shall pay to the plaintiff the "settlement sum" of $100,000. 2. The settlement sum shall be paid as follows: $30,000 within 30 days of Court approval of the settlement and the $70,000 balance to be payable over the following 6 months in equal monthly installments. 3. All the defendants shall provide the plaintiff's counsel with a confession of judgement for twice the unpaid balance of the settlement. 4. The defendants shall provide the plaintiff's counsel with a copy of any agreement between them and any Toyota dealership at which the plaintiff provided cleaning services. 5. If no such agreement exists, then defendant Fernando Barrios shall provide an affidavit to plaintiff's counsel confirming same. 6. This agreement remains enforceable even if a party fails/refuses to sign a contemplated more comprehensive settlement agreement. 7. Kindly confirm to each other your acceptance of these terms.

(Dkt. No. 16-1 ("Email Term Sheet") at 2–3). Seven minutes later, Defendants' attorney, Paul Rooney, responded "Confirmed that terms are accepted." (Id. at 2). Thirteen minutes after Mr. Rooney's email, Plaintiff's attorney, Elana T. Henderson, responded: "Confirmed. Only thing to specify is that this is for the settlement of all claims against the RMB [*sic*] defendants and individual defendants, not a global settlement, the Toyota defendants (and any future Toyota defendants) remain in the action." (Id.). Mr. Rooney responded that Ms. Henderson was correct. (Id. at 1).

Ms. Henderson emailed Mr. Rooney on December 23, 2025, indicating that she would be filing the December 25, 2025 joint status report, which stated that Plaintiff and the RBM Defendants had settled and "will be entering into a settlement agreement." (Dkt. No. 16-2 at 1–2). Mr. Rooney responded that he had no changes to the letter. (Id. at 2). On January 6, 2026, Court's Alternative Dispute Resolution ("ADR") administrator reported that the mediation settled in principle. On January 14, 2025, Ms. Henderson sent a draft settlement agreement to

Mr. Rooney asking for his edits. (Dkt. No. 16-4 at 3). On January 20, 2026, Ms. Henderson emailed Mr. Rooney again, stating that the Parties had a status report deadline and that she would ask for an additional two weeks to file the settlement agreement with the Court. (Id. at 2). Mr. Rooney agreed, stating that he needed at least another day to give his input on the draft agreement. (Id.).

On February 5, 2026, Plaintiff filed his Second Amended Complaint and added a breach of contract claim against the RBM Defendants, alleging that the RBM Defendants "are refusing to move forward with the settlement, or honor the terms of the agreement, despite Plaintiff having sent them a draft agreement as discussed, and remaining ready to dismiss the action." (Second Am. Compl. ¶ 172). He argues that the Mediator's Email Term Sheet is an enforceable contract and that the RBM Defendants breached the contract by "refus[ing] to even review the draft settlement agreement and by formally asserting th[at] they no longer intend to settle or pay the negotiated settlement sum." (Id. ¶ 173). In the Second Amended Complaint, Plaintiff seeks consequential damages of double the settlement sum pursuant to the terms of the Email Term Sheet. (Id. ¶ 177, 178).

On February 10, 2026, Ms. Henderson emailed Mr. Rooney stating that she would be moving the Court for approval of the mediator's Email Term Sheet commemorating the terms of the settlement reached in mediation. (Dkt. No. 16-6 at 2). Mr. Rooney responded on February 10, 2026 that his client had refused to sign the draft agreement. (Id.) On February 11, 2026, Ms. Henderson indicated to Mr. Rooney that she would be filing the present Motion for Settlement Approval and Mr. Rooney responded that his client still refused to sign the agreement. (Id. at 1).

That same day, she filed the Motion for Settlement Approval and included a copy of the unexecuted draft agreement. (See Dkt. No. 16-3).

On June 11, 2026, the Court held a hearing regarding the enforceability of the Email Term Sheet and the fairness and reasonableness of the proposed agreement under the Second Circuit's framework in Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015). During the hearing, Plaintiff maintained the position that the terms set forth in the Email Term Sheet were enforceable, and the RBM Defendants, through counsel, indicated that they were not challenging the enforceability of the Email Term Sheet. RBM Defendants' counsel also confirmed that Defendant Fernando Barrios, the head of the RBM corporate defendants, was present for the mediation, represented the RBM Defendants at the mediation, and had the authority to bind the RBM Defendants when he agreed to the terms negotiated at the mediation. Defendants' counsel also told the Court that immediately after the mediation but before the mediator had sent the Email Term Sheet, Mr. Barrios asked Plaintiff if the RBM Defendants could have a longer payment plan, but, when Plaintiff said that he would only consent to the change if RBM paid more toward the settlement, Mr. Barrios agreed again to the original terms negotiated during the mediation. At the fairness hearing, the Court stated that the enforceability of the Email Term Sheet as a settlement agreement remained an open question that prevented the Court from being able to recommend from the bench whether the District Court should find the settlement fair and reasonable. After further review of the record, the Court now respectfully recommends that the District Court find both that the Email Term Sheet is an enforceable agreement and that it is a fair and reasonable agreement.

## DISCUSSION

### I. Enforceability

The Court must first determine whether either the draft settlement agreement or the Email Term Sheet are enforceable contracts.

#### A. The Draft Settlement Agreement

"Settlement agreements are governed by the principles of contract law." Sprint Commc'ns Co. L.P. v. Jasco Trading, Inc., 5 F. Supp. 3d 323, 327 (E.D.N.Y. 2014) (citing Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007)).[3] It is "well established that unsigned writings prepared by a plaintiff, without more, do not suffice to bind a defendant." Bronner v. Park Place Ent. Corp., 137 F. Supp. 2d 306, 311 (S.D.N.Y. 2001) (citations omitted). An unsigned contract is only enforceable if there is objective evidence establishing that the parties intended to be bound. Paxi, LLC v. Shiseido Americas Corp., 636 F. Supp. 2d 275, 282 (S.D.N.Y. 2009).

Here, there is no objective manifestation of intent that either party intended to be bound by the comprehensive draft settlement agreement prepared by Plaintiff's counsel. No party has signed the agreement. Defendants' counsel twice indicated that his clients refused to sign the draft agreement. Moreover, Plaintiff's counsel indicated in her February 10, 2026 email that she would be moving this Court for approval of the Email Term Sheet—not the draft settlement agreement. Because there is no evidence of intent by any party to be bound by the draft

[3] Because there is "no meaningful difference" between New York state law and federal common law in evaluating the enforceability of a settlement agreement, the Court applies common law as interpreted by federal courts. See Sprint Commc'ns Co., 5 F. Supp. 3d at 328 (collecting cases).

settlement agreement, the Court respectfully recommends that the District Court find that it is not an enforceable agreement.

B. The Mediator's Email

"[P]arties are free to bind themselves orally, and the fact that they contemplate later memorializing their agreement in an executed document will not prevent them from being bound by the oral agreement. However, if the parties intend not to be bound until the agreement is set forth in writing and signed, they will not be bound until then." Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 322 (2d Cir. 1997). In the absence of a signed writing, the Court must consider "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." Winston v. Mediafare Ent. Corp., 777 F.2d 78, 80 (2d Cir. 1985). Because "[n]o single factor is decisive, but each provides significant guidance," the Court "evaluate[s] each of the Winston factors separately…and assess[es] them together." In re Lehman Bros. Holdings Inc., 739 F. App'x 55, 57 (2d Cir. 2018).

1. Express Reservation

The first factor is "the weightiest of the four." Samuel v. Bd. of Educ. of NYC, No. 12 CV 4219, 2015 WL 10791896, at *3 (E.D.N.Y. Aug. 11, 2015) (Vitaliano, J.) (quotation omitted), aff'd sub nom. Samuel v. New York City Bd. of Educ., 668 F. App'x 381 (2d Cir. 2016). "'[I]f *either party* communicates an intent not to be bound until [he or she] achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result

in the formation of a binding contract.'" Id. (emphasis in original) (quoting In re Artha Mgmt., Inc., 91 F.3d 326, 329 (2d Cir.1996)). "While no single factor is decisive, if there is a writing between the parties showing that a party did not intend to be bound, then a court need look no further than the first factor." Sprint Commc'ns Co. L.P., 5 F. Supp. 3d at 328 (internal quotations and alterations omitted).

The record does not reflect an intent not to be bound until the later signing of a fully executed document. Mediator Andrew Kimler sent an email immediately following the Parties' mediation, memorializing the agreed-upon terms. The email expressly stated that "[t]his agreement remains enforceable even if a party fails/refuses to sign a contemplated more comprehensive settlement agreement." The parties that attended the mediation confirmed, through counsel, their acceptance of the terms of the mediator's email. No party has expressed an intent not to be bound by the terms of the Email Term Sheet—either by filing an opposition to the present Motion or on the record during the Court's June 11, 2026 fairness hearing. The record reflects that both Plaintiff and the RBM Defendants had an intent to be bound by the terms of the Email Term Sheet and that there was no reservation of the right not to be bound in the absence of the more comprehensive agreement. This weighs in favor of enforceability.

2. Partial Performance

The second Winston factor "has the least sway with the court." Samuel, 2015 WL 10791896, at *4 (internal quotation and alteration omitted). This factor "is met when one party has partially performed its obligations under the settlement, and that performance has been accepted by the party disclaiming the existence of an agreement." Conway v. Brooklyn Union Gas Co., 236 F. Supp. 2d 241, 250 (E.D.N.Y. 2002). Courts have found partial performance

where the parties have exchanged paperwork, even where the counterparty did not sign, and neither party resumed litigation of the case. Samuel, 2015 WL 10791896, at *4; Conway, 236 F. Supp. 2d at 250. Partial performance has also been found where the parties began drafting a final agreement and allowed the Court's ADR administrator to report that the case had settled without any correction or comment. Rivera v. Crabby Shack, LLC, No. 17 CV 4738, 2019 WL 8631861, at *2 (E.D.N.Y. May 2, 2019); Jackson v. New York City Dep't of Educ., No. 10 CV 9193, 2012 WL 1986593, at *3 (S.D.N.Y. June 4, 2012).

In this case, the Court's ADR administrator reported the mediation settled in principle on January 6, 2026, and no party corrected nor commented on this representation. Plaintiff's counsel began drafting the comprehensive settlement agreement, which she sent to Defendants on January 14, 2026, and filed a joint letter on the docket on January 20, 2026, reporting that the "matter settled at mediation" and that the Parties were "finalizing the settlement documents and intend to submit them for Cheeks approval shortly." The RBM Defendants did not assert that Plaintiff was incorrect or that they were not participating in finalizing the settlement documents. Finally, no party has resumed litigation beyond seeking the present settlement approval. The Court therefore finds that there has been partial performance and this weighs in favor of enforceability.

3. Agreement to All Terms

"The third factor, whether all terms have been agreed to, weighs in favor of enforcement when 'there was literally nothing left to negotiate.'" Williams v. Playscripts, Inc., No. 22 CV 6861, 2024 WL 3823198, at *6 (E.D.N.Y. Aug. 13, 2024) (quoting Winston, 777 F.2d at 82), report and recommendation adopted, 2024 WL 4043739 (E.D.N.Y. Sept. 4, 2024). "[R]egardless

of whether terms are challenged after the fact, if neither party disputed them at any time during or before the execution of the settlement agreement, there is no lack of agreement as to the terms stated on the record, and, therefore, this factor must weigh in favor of enforcement." Samuel, 2015 WL 10791896, at *4 (internal quotation omitted). Moreover, courts have found that executing a settlement agreement during the course of mediation presents a formality of circumstances supporting the inference that the terms of the agreement are binding. Rivera, 2019 WL 8631861, at *2.

Here, the Email Term Sheet contains all material terms and there is no evidence of disagreement between the Parties regarding the terms in the Email Term Sheet. Defendant Fernando Barrios attended the mediation on behalf of the RBM Defendants and agreed to the terms at mediation. Immediately following the mediation, but before the mediator memorialized the terms via email, Mr. Barrios asked Plaintiff whether the RBM Defendants could pay over a longer period of time but, after Plaintiff said that he would only consent to that change if the RBM Defendants paid more to settle the action, Barrios agreed again to the original terms. The parties then, through counsel, confirmed their agreement to the terms by responding to the mediator's Email Term Sheet. In consequence, the third factor weighs in favor of enforceability.

4. Type of Agreement Usually Reduced to Writing

Courts in this District have held that "although agreements to settle FLSA cases are typically reduced to writing" this factor is met where the attorneys for both sides had a written agreement listing the material terms and stating that the parties would memorialize the terms in a later settlement agreement. See Rivera, 2019 WL 8631861, at *2. Here, the Parties reduced the material terms of their agreement to writing by confirming over email their intent to be bound by

the mediator's Email Term Sheet. The fourth Winston factor therefore favors a finding of enforceability.

* * *

The Court has determined that all four Winston factors favor a finding that the mediator's Email Term Sheet became binding on December 23, 2025, when both Parties indicated their intent to be bound by the terms. The Court therefore respectfully recommends that the District Court find that the Email Term Sheet is an enforceable contract.

## II. Settlement Approval

### A. Total Settlement Amount

Parties may not "privately settle FLSA claims with a stipulated dismissal with prejudice under Federal Rule of Civil Procedure 41 absent the approval of the district court . . . ." Fisher v. SD Prot. Inc., 948 F.3d 593, 599 (2d Cir. 2020) (citing Cheeks v. Freeport Pancake House, Inc., 796 F.3d at 200). "Before approving a settlement, a court must be satisfied that its terms are 'fair and reasonable.'" Rivera, 2019 WL 8631861, at *4 (quoting Flores v. Food Express Rego Park, Inc., No. 15 CV 1410, 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016)). The Court must therefore "consider a plaintiff's possible range of recovery, the extent to which the settlement avoids the burdens and expense of litigation, the litigation risks faced by the parties, whether the settlement was reached through arms-length bargaining with the assistance of counsel, and the possibility of fraud or collusion." Id. (citing Douglas v. Allied Universal Sec. Servs., No. 17 CV 6093, 2019 WL 1578072, at *2 (E.D.N.Y. Mar. 29, 2019)).

Here, according to the damages chart submitted in support of the present Motion, Plaintiff alleges his total possible recovery reaches $232,614.50, including $94,339.75 in unpaid

minimum and overtime wages, $21,111 in spread-of-hours premiums, $115,450.75 in liquidated damages, and $1,713 in prejudgment interest.[4] (Dkt. No. 16-5). The mediator's Email Term Sheet states that the Parties agreed to settle all claims in this action for $100,000 paid in a $30,000 initial installment 30 days following Court approval, and $70,000 paid in six subsequent equal monthly installments. The Court calculates that the settlement amount is 42.98% of Plaintiff's total possible recovery should he succeed at trial.[5] The Email Term Sheet includes Defendants' agreement to provide Plaintiffs with a confession of judgment for twice the outstanding amount of the settlement. In the event that Defendants default on their payment obligations, Plaintiff would then be able to recover the double the outstanding settlement amount. The confession of judgment acts as both a carrot – incentivizing Defendants to meet their payment obligations – and a stick – building in additional compensation to Plaintiff and his counsel who will incur additional costs to collect on the confession of judgment if Defendants do not pay. Neither party has challenged the reasonableness of the $100,000 settlement amount or the amount of the confession of judgment that Defendants agreed to. In light of the facts and circumstances of this case, both amounts are reasonable.

---

[4] Plaintiff brings claims under the Wage Theft Protection Act for failure to provide wage notices and wage statements but does not include damages for these claims in his damages calculations submitted in support of the present Motion. The Court notes that an employer's failure to provide wage notices within ten business days of his first day of employment entitles the employee to recover $50 in civil damages for each workday that the violation occurred, up to a maximum of $5,000. NYLL § 198(1-b). An employer's failure to provide a wage statement with every wage payment entitles the employee to collect $250 in damages for each workday that the violations occurred up to $5,000. NYLL § 198(1-d).

[5] The total settlement amount also includes $8,925 to be paid out of the total settlement amount to counsel in repayment of a litigation loan. (Mot. at 7). According to Plaintiff's counsel during the fairness hearing, Plaintiff was concerned about the possibility of retaliation for bringing this claim and took out a loan against the settlement fund to pay for housing. This amount is being repaid by counsel out of the total settlement amount.

B. Additional *Cheeks* Factors

In addition to considering the fairness and reasonableness of the settlement amount, Courts review FLSA settlements for provisions that do not further "the unique policy considerations underlying the FLSA." Cheeks, 796 F.3d at 206. These potentially abusive provisions include restrictive confidentiality provisions and overbroad releases of claims. See Allen v. County of Nassau, No. 22 CV 1572, 2023 WL 4086457, at *5 (E.D.N.Y. June 20, 2023). They also include bans on future employment and non-disparagement clauses that do not contain a carve-out for truthful statements. See Ortiz v. My Belly's Playlist LLC, 283 F. Supp. 3d 125, 126 (S.D.N.Y. 2017) (discussing provisions banning future employment); Luna v. J.S. Held LLC, No. 21 CV 3072, 2023 WL 2214012, at *4 (E.D.N.Y. Feb. 24, 2023) (discussing non-disparagement clauses). The Email Term Sheet contains no such problematic provisions.

The parties were represented by experienced counsel, and the terms of the agreement were reached after over five hours of arm's length negotiation before an experienced mediator. The mediation and the resulting settlement avoid the risks and costs involved in pursuing this litigation to trial and gives the parties peace of mind that they will not incur additional expenses and face an uncertain outcome at trial. It is also clear from the record and from counsels' conduct that they have maintained a professional relationship throughout this litigation and there is no possibility of fraud or collusion in reaching this agreement.

C. Attorney's Fees and Costs

The Email Term Sheet does not include a breakdown of the distribution of the $100,000 settlement amount between Plaintiff's recovery, attorney's fees, and costs. Plaintiff's counsel seeks $33,333.33 of the settlement amount in attorney's fees pursuant to counsel's retainer

agreement with their client and $2,392.70 for the costs of filing this matter, serving Defendants with the Complaint and Summons, and attending mediation. (See Mot. at 6–8).

"Agreements for attorney's fees must be reviewed for reasonableness, no less than any other part of an FLSA settlement." Quispe v. Stone & Tile Inc., 583 F. Supp. 3d 372, 379 (E.D.N.Y. 2022) (citing Caceres v. Brentwood Farmers Mkt., Inc., No. 20 CV 3476, 2021 WL 3276637, at *2 (E.D.N.Y. May 4, 2021)). Attorney retainer agreements reserving a one-third contingency fee are routinely approved in FLSA cases in this Circuit. See Castillo v. Cranes Express Inc., No. 18 CV 1271, 2018 WL 7681356, at *4 (E.D.N.Y. Dec. 12, 2018); Allen v. Cnty. of Nassau, No. 22 CV 1572, 2023 WL 4086457, at *5 (E.D.N.Y. June 20, 2023) (collecting cases); Quispe, 583 F. Supp. 3d at 380. However, even where parties enter a presumptively reasonable one-third contingency arrangement, Courts must still assess the reasonableness of the attorney's fees sought. Quispe, 583 F. Supp. 3d at 380.

1. Attorney's Fees

Courts begin this analysis by calculating the "lodestar" amount—a presumptively reasonable fee derived from multiplying the reasonable hourly rate and reasonable number of hours required by the case. Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Moore v. Diversified Collection Servs. Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013), report and recommendation adopted by, 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013). Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors. Conwan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan.

12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002); see also Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

a. Reasonable Hourly Rate

Courts in the Eastern District have recently calculated the reasonable hourly rate in this district to be "$450 to $650 for partners, $300 to $450 for senior associates, $150 to $300 for junior associates, and $100 to $150 for paralegals." Moore v. Rubin, 766 F. Supp. 3d 423, 428 (E.D.N.Y. 2025) (adopting these rates "[a]fter an extensive and well-documented discussion of the impact of inflation on the cost of living"); see also Kimba Indus. Inc. v. Fortegra Specialty Ins. Co., No. 24 CV 01334, 2026 WL 618037, at *6 (E.D.N.Y. Mar. 5, 2026) (awarding $400 hourly rate to associate with 10 years of experience), Taylor v. Cooper Power & Lighting, No. 22 CV 2236, 2025 WL 2524467, at *4 (E.D.N.Y. July 14, 2025) (approving $200 hourly rate for an associate with approximately 4 years of experience). The highest rates permitted in the district are "reserved for expert trial attorneys with extensive experience before the federal bar…and [who] are recognized by their peers as leaders and experts in their fields." Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 300 (E.D.N.Y. 2012). See Perkowski v. Town of Brookhaven, No. 18 CV 5480, 2023 WL 5510639, at *4 (E.D.N.Y. Aug. 25, 2023) (finding the highest rate "is generally reserved for attorneys with special expertise in the relevant field"); Pagano v. HN & Sons LLC, No. 22 CV 4897, 2025 WL 3460470, at *7 (E.D.N.Y. Aug. 28, 2025) ("Hourly rates at the higher end of the reasonable range for partners are generally reserved for attorneys with over two decades of legal experience"); Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, No. 10 CV 2262, 2019 WL 2870721, at *11 (E.D.N.Y. June 18, 2019), report and recommendation adopted by, 2019 WL 2869150 (E.D.N.Y. July 3,

2019) (recognizing an award on the upper range of permissible fees is "properly reserved only for the most experienced litigators in a particular field" and giving such a rate to partners with over 50 years of experience). Courts upwardly depart from these rates only for rare occasions requiring "specific evidence that the lodestar fee would not have been adequate to attract competent counsel." See Rubin v. HSBC Bank USA, NA, 763 F. Supp. 3d 233, 240 (E.D.N.Y. 2025) (quotation omitted).

Plaintiff was represented by Elana T. Henderson, who has been a practicing litigator for approximately 13 years and has focused on wage and hour claims for approximately 6 years. (Dkt. No. 17 at 1). As a partner at her firm, she bills at a rate of $495 per hour. (Id.). The Court finds this rate is well within the rates approved for partners with similar experience in this District.

b. Reasonable Hours

To assess the reasonableness of time spent on a litigation, the Court "uses [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent ... in a given case." Division 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc., 270 F. Supp. 3d 593, 619 (E.D.N.Y. 2017) (quoting Fox Indus., Inc. v. Gurovich, No. 03 CV 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)). District courts consider "not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).

Here, Plaintiff's counsel states that she spent approximately 100 hours on this litigation "drafting pleadings, reviewing client documents, strategizing, meeting with Plaintiff, engaging in

conversations and negotiations with opposing counsel, preparing for and attending a full-day mediation, engaging in post-mediation conversations with opposing counsel, and drafting the underlying motion for enforcement and approval." (Dkt. No. 17 at 1–2). Although the number of hours spent on this matter may be high for what has thus far been a straightforward and early-stage wage and hour settlement, an attorney's fee award of one-third of the settlement amount is reasonable in light of counsel's success in obtaining a positive outcome for Plaintiff and the considerations discussed *supra*.

2. Costs

Counsel may recover attorney's costs for "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." Ctr. for Popular Democracy v. Bd. of Governors of Fed. Rsrv. Sys., No. 16 CV 5829, 2021 WL 4452202, at *14 (E.D.N.Y. Sept. 29, 2021) (adopting Report and Recommendation) (citing LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998)). Counsel's ordinary overhead expenses are not recoverable. Guishan, Inc. v. Arici, 635 F. Supp. 2d 187, 195 (E.D.N.Y. 2009) (quoting Sec. & Exch. Comm'n v. Goren, 272 F. Supp. 2d 202, 214 (E.D.N.Y. 2003). Costs for service, filing, and mediation fees are generally recoverable. See Li v. HLY Chinese Cuisine Inc., 596 F. Supp. 3d 439, 453 (E.D.N.Y. 2022); Quispe, 584 F. Supp 3d at 381. The fee applicant must demonstrate their entitlement to these costs by attaching invoices as exhibits. Houston v. Cotter, 234 F. Supp. 3d 392, 411 (E.D.N.Y. 2017) (quoting D.J. ex rel. Roberts v. City of New York, No. 11 CV 5458, 2012 WL 5431034, at *9 (S.D.N.Y. Oct. 16, 2012) report & recommendation adopted sub nom. Roberts v. City of New York, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012)). "Generally, the only exception to this rule

is where reimbursement is sought for a filing fee." Kindle v. Dejana, 308 F. Supp. 3d 698, 705 (E.D.N.Y. 2018).

Here, counsel seeks $2,302.70 in costs, including the $405 filing fee, $1,472.70 in service costs, and $425 in mediation fees. (Mot. at 7). In her supplemental filing in support of the present motion, counsel provided the Court with invoices memorializing the costs for service and mediation, and the filing fee is reflected on the docket. As all costs are reasonable, recoverable, and accounted for, the Court finds that it is reasonable for counsel to recover her costs from the total settlement amount.

III. Plaintiff's Breach of Contract Claim

Plaintiff's Second Amended Complaint, filed after mediation but prior to the present Motion, adds a breach of contract claim, alleging the RBM Defendants breached the Email Term Sheet by "refusing to move forward with the settlement, or honor the terms of the agreement." (Second Amended Complaint ¶ 172). District courts have the power to dismiss a claim *sua sponte* for failure to state a claim. See Leonhard v. United States, 633 F.2d 599, 609 n.11 (2d Cir. 1980).

The Email Term Sheet contained a requirement that specifies that the first settlement payment is due "within 30 days of Court approval," which has not yet occurred. In consequence, the allegations in the Second Amended Complaint do not state a claim for breach of contract. The Court respectfully recommends that the District Court *sua sponte* dismiss the Second Amended Complaint's breach of contract claim without prejudice to renew.

IV. Remaining Defendants

The settlement above was reached between Plaintiff and the RBM Defendants only. There is no proof of service on the docket indicating that the Toyota Defendants have been served. Federal Rule of Civil Procedure 4(m) requires service on a Defendant within 90 days after the complaint is filed or the Court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Plaintiff indicated during the Court's fairness hearing that he may voluntarily dismiss the remaining Defendants or could name additional Defendants. The Court respectfully recommends that the District Court's Order include a direction that Plaintiff file a status report within 14 days of the District Court's Order apprising the Court of the status of these remaining Defendants and indicating whether he intends to properly serve them or voluntarily dismiss them.

## CONCLUSION

For the reasons set forth above, the Court respectfully recommends that the District Court find the mediator's Email Term Sheet is an enforceable agreement and approve the terms set forth therein as fair and reasonable. The Court also recommends that the District Court *sua sponte* dismiss the Second Amended Complaint's breach of contract claim without prejudice to renew. Lastly, the Court recommends that the District Court's Order include a direction that Plaintiff file a status report within 14 days of the District Court's Order apprising the Court of the status of the remaining Defendants and indicating whether he intends to properly serve them or voluntarily dismiss them.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the Parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
September 18, 2026

*/s/ Peggy Cross-Goldenberg*
Peggy Cross-Goldenberg
United States Magistrate Judge
Eastern District of New York